## McDaniel v. Hazelip.

(Decided April 25, 1912.)

## Appeal from Warren Circuit Court.

Deed—Mortgage—Evidence.—In an action by the grantor in a deed executed, acknowledged and delivered by her, to have the deed adjudged a mortgage, evidence examined and held to sustain the finding of the chancellor that the deed was not intended as a mortgage.

J. M. SIMMONS and DOUGLAS & WILKINSON for appellant.

SIMS & RODES for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Sophia McDaniel brought this action against appellee, John M. Hazelip, for the purpose of having a deed which she had executed to him declared to be a mortgage. The chancellor denied her the relief prayed for, and she appeals.

It appears that appellant purchased from A. G. Wilcoxson, in August, 1905, a dwelling house and about one acre of ground in Smith's Grove, Kentucky. The consideration was $170. She paid for the property with the proceeds of a loan of $175, which she obtained from a colored man by the name of Samuel Carpenter, to whom she executed her note, payable in six months, and a mortgage on the property to secure the same. Being unable to pay the mortgage debt, she approached Dr. John W. Cooke, and asked him to help her in the matter. According to her evidence, she did not want to sell her property, but simply asked Dr. Cooke to borrow the money for her. He told her he would see what he could do for her. In a few days he reported that he could get the money for her from appellee, John M. Hazelip. She

told Dr. Cooke that she didn't want to borrow any money from John M. Hazelip, and didn't want to have anything to do with him. Dr. Cooke replied that she would not be borrowing money from Hazelip, nor would she have anything to do with him, but that he would get the money from Hazelip and loan it to her himself, and take a mortgage on her property to secure the payment of the same. Soon after this she was told by Dr. Cooke that her money was ready for her, and he directed her to go to the Deposit Bank of Smith's Grove, Ky., of which E. G. Wilcoxson was president, for the purpose of executing a mortgage. On February 23, 1906, she went to the bank to execute what she thought and understood was a mortgage on her property to Cooke to secure the payment of $182.50 for the purpose of paying the Carpenter debt. Neither the money nor a check was turned over to her. On the next day she was informed by some friends and by Carpenter that she had been deceived and that the paper which she had executed and acknowledged was an absolute deed to the property. She thereupon went to Cooke and told him what she had heard, and demanded a return of the deed. Thereupon Cooke told her that he would see his brother-in-law, John M. Hazelip, and get him to give her the deed. About a year later, she borrowed from James R. Kirby the money with which to pay the Carpenter debt.

According to the evidence for appellee, Dr. Cooke approached him and asked him if he could not let appellant have the money to pay off the Carpenter debt. Appellee told Cooke that he would not lend any money on the property; that the amount she desired was too small, and if he had any trouble, it would be worth more than he would get out of it. Appellant then approached appellee upon the matter. Appellee told her that he could not lend her any money; that he did not want to fool with it. Later on Dr. Cooke came to appellee and again stated that appellant was about the lose her place, and wanted to know if he could not make some arrangement with appellee to save her place. Appellee again told him that he would not lend any money on the property. Appellant then sent for appellee and Dr. Cooke to come to her house. They went to the house, and appellee then agreed to buy a portion of appellant's property for the sum of $182.50, which would discharge the Carpenter debt and still leave her her house and two-fifths of the lot left. While there, appellee and Dr. Cooke staked off

a portion of her lot, which appellee purchased. Appellant was present and agreed to this. The parties then proceeded to the bank for the purpose of having Mr. Wilcoxson, the president, draw up the deed. Dr. Cooke then returned and got appellant's deed. Appellee gave Mr. Wilcoxson a plot of the place he had staked off, and told him the consideration. Before Mr. Wilcoxson finished the deed appellant came to execute it. Wilcoxson told her it was not ready. At that time appellant told him she had made a good trade. Before the deed was executed, it was read over to her by Mr. Wilcoxson, and its nature and effect explained to her fully. She thereupon signed and acknowledged it. After the execution and delivery of the deed to appellee, Dr. Cook took the money and tendered it to Samuel Carpenter in payment of the debt due him. Carpenter refused to take it. He then took the money in question and tendered it to appellant, who likewise declined to take it. He then placed the money in the bank to appellant's credit.

Upon the question of the value of that portion of the property purchased by appellee, one witness for appellant places it at $200. Three or four other witnesses fix the value at $400 or $500. Several witnesses for appellee fix the value at from $150 to $175.

Upon these facts, we see no reason for disturbing the finding of the chancellor. The decided weight of the evidence is to the effect that appellant agreed to sell a portion of her property for the purpose of paying off the mortgage debt thereon, so that she might have the remainder of her property free from debt. The testimony of the witnesses for appellee finds support in the fact that the three-fifths of the property purchased by appellee was actually staked off, and a deed made to that portion only. Had the parties intended merely to execute a mortgage, there is no reason that this should have been done, for it is not at all probable that appellee would have taken a portion of the property as security for the loan, when he could have had a mortgage upon all of the property. Nor is the evidence sufficient to show that the real value of the property purchased was in excess of the price actually paid. A careful reading of the evidence shows that there was quite an advance in the value of real property in Smith's Grove after the time of the transaction in question, and it is very doubtful if appellant's witnesses took this advance into consideration. It is apparent from their testimony that their opinions

were based upon the value of the property at the time they gave their depositions, rather than at the time appellee acquired the property. On the other hand, the testimony of appellee's witnesses as to the real value of that part of the property purchased by him is confirmed by the fact that though appellant paid $175 for all the property, appellee, six months later, paid her $182.50 for three-fifths of the property, without any improvements, thus leaving her the residence and two-fifths of the property unencumbered. Our conclusion is that appellant intended to sell and convey to appellee that part of the property purchased by him, and that appellee paid full value therefor. It is manifest that appellant made the trade and executed the deed with full knowledge of what she was doing, and that her subsequent attempt to repudiate the transaction was due to the efforts of others, who tried to impress her with the fact that she had made a bad trade.

Judgment affirmed.